SCANNED at JCCC and E-mailed
6/13/2016 by _____ . 28 pages
date        initials   No.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

DIAMOND-Donnell D. Blair #186595 )
(full name)              (Register No.)   )

_____   )

_____   )

          Plaintiff(s).              )

                        )

v.                                   )

                        )

CORIZON MEDICAL SERVICE          )
(Full name)                          )
STACEY WALKES                        )
RONALD J. PROCTOR, MD.,              )
       Defendant(s).                 )

**16 - 41 90 - CV - C - BCW-P**

Case No. _____

Defendants are sued in their (check one):
☑ Individual Capacity
☐ Official Capacity
☑ Both

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I.    Place of present confinement of plaintiff(s): Jefferson City Correctional Center
_____

II.    Parties to this civil action:

Please give your commitment name and any another name(s) you have used while incarcerated.

A. Plaintiff DIAMOND-Donnell D. Blair     Register No. 186595
Address 8200 No More Victims Road, Jefferson City, Missouri 65101.

B. Defendant CORIZON MEDICAL SERVICE, 103 Powell Court, Brentwood, Tennessee, 37027
Is employed as the Missouri Department of Corrections Contracted Medical Service Provider

For additional plaintiffs or defendants, provide above information in same format on a separate page.

1

II. PARTIES TO THIS CIVIL ACTION:

B. DEFENDANT STACEY WALKES

IS EMPLOYED AS CORIZON CLAIMS AGENT, PO BOX 981639, EL PASO, TEXAS 79998.

DEFENDANT: RONALD J. PROCTOR, MD, #RJPOC2MD

IS EMPLOYED AS: INSTITUTIONAL MEDICAL DOCTOR AT THE JEFFERSON CITY CORRECTIONAL
CENTER, JEFFERSON CITY, MISSOURI, 65101 (8200 No MORE VICTIMS ROAD), THROUGH
CORIZON MEDICAL SERVICE.

DEFENDANT: NARENDHASINH KHENGAR, # NKKOOIJC

IS EMPLOYED AS: INSTITUTIONAL MEDICAL PRACTITIONER FOR CORIZON MEDICAL SERVICE, AND
AT THE JEFFERSON CITY CORRECTIONAL CENTER, 8200 No MORE VICTIMS ROAD, JEFFERSON CITY,
MISSOURI, 65101.

DEFENDANT: PAMELA S. SWARTZ, APRN, #PSS00#JC

IS EMPLOYED AS: INSTITUTIONAL MEDICAL PRACTITIONER FOR CORIZON MEDICAL SERVICE, AND
WITH THE JEFFERSON CITY CORRECTIONAL CENTER, 8200 No MORE VICTIMS ROAD, JEFFERSON CITY,
MISSOURI, 65101

DEFENDANT: CRYSTAL HEWSTON, RN

IS EMPLOYED AS: REGISTERED NURSE AT THE JEFFERSON CITY CORRECTIONAL CENTER,
8200 No MORE VICTIMS ROAD, JEFFERSON CITY, MISSOURI, 65101, UNDER CORIZON MEDICAL
SERVICE.

(ATTACHMENT #1, PAGE 1, SEC. II-B)

II. PARTIES TO THIS CIVIL ACTION:

B. DEFENDANT: J. BREDEMAN, M.D.

IS EMPLOYED AS: DIRECTOR of OPERATIONS, ASSOCIATE REGIONAL MEDICAL DIRECTOR, WITH

MISSOURI DEPARTMENT of CORRECTIONS, THROUGH CORIZON MEDICAL SERVICE, P.O. BOX 236

JEFFERSON CITY, MO., 65102.

DEFENDANT: J. COFIELD,

IS EMPLOYED AS: DIRECTOR OPERATIONS, CONSTITUENT SERVICES, WITH THE MISSOURI

DEPARTMENT of CORRECTIONS, 2729 PLAZA DRIVE, P.O. BOX 236, 65102

DEFENDANT: DELOISE WILLIAMS

IS EMPLOYED AS: ASSISTANT DIVISION DIRECTOR of REHABILITATIVE SERVICES WITH THE

MISSOURI DEPARTMENT of CORRECTIONS, P.O. BOX 236, JEFFERSON CITY, MO., 65102

DEFENDANT: MS. LARIMORE,

IS EMPLOYED AS: HEALTH SERVICES ADMINISTRATOR WITH THE MISSOURI DEPARTMENT of

CORRECTIONS, AT JEFFERSON CITY CORRECTIONAL CENTER, 8200 NO MORE VICTIMS ROAD,

JEFFERSON CITY, MO, 65101

( ATTACHMENT #2, PAGE 1, SEC. II. B. )

III.    Do your claims involve medical treatment?    Yes ✓    No _____

IV.    Do you request a jury trial?    Yes ✓    No _____

V.    Do you request money damages?    Yes ✓    No _____

    State the amount claimed?    $ 700,000 / 250,000 (actual/punitive)

VI.    Are the wrongs alleged in your complaint continuing to occur?  Yes ✓ No ___

VII.    Grievance procedures:

    A.  Does your institution have an administrative or grievance procedure?
        Yes ✓    No _____

    B.  Have the claims in this case been presented through an administrative or grievance procedure within the institution?    Yes ✓    No _____

    C.  If a grievance was filed, state the date your claims were presented, how they were presented, and the result of that procedure. (Attach a copy of the final result.)

    Initial Grievance filed on or about November 15, 2015, and again on or about December, 2015. The claims presenter were through the grievance procedures policies for the institution and exhausted after appeal of the grievance a the result were denial of my complaint(s).

    D.  If you have not filed a grievance, state the reasons.

    N/A

VIII.    Previous civil actions:

    A.  Have you begun other cases in state or federal courts dealing with the same facts involved in this case?    Yes ✓    No _____

    B.  Have you begun other cases in state or federal courts relating to the conditions of or treatment while incarcerated?    Yes ✓    No _____

    C.  If your answer is "Yes," to either of the above questions, provide the following information for each case.

        (1) Style: Diamond D. Blair  v.  Michael Bowersox, et al
                (Plaintiff)               (Defendant)
        (2) Date filed: December 9, 2015

(3) Court where filed: *U.S. Dist. Court, West Dist. MO. (Kansas City)*

(4) Case Number and citation: *15-3532-CV-S-RK*

(5) Basic claim made: *Deliberate Indifference - Failure To Protect*

(6) Date of disposition: *N/A*

(7) Disposition: *N/A Pending*
               (Pending) (on appeal) (resolved)

(8) If resolved, state whether for:_____
               (Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX.    Statement of claim:

A.    State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

*June 7, 2015, Plaintiff Dimmous D. Blair, was attacked and struck from behind by an unknown assailant - The second attack in as many months. The resulting attack required the Plaintiff to be ambulated to an outside hospital emergency room. Plaintiff was transported via paramedics from the SouthCentral Correctional Center Infirmary to the Texas County Hospital where - after a ___ series of test was MRI exams by the attending physician - it was ordered he be transported to a larger medical facility better ___ suited to treat his medical condition - As he was paralyzed in his right extremities - Plaintiff was then transported to the University Hospital located in Columbia, Missouri. There, Plaintiff was admitted to the facility's emergency room where he was visually and physically examined before being transported to the facility's MRI station for examination and x-ray. It was assessed that Plaintiff suffered 4 horizontal oriented fracture line beginning at right proximal (see attached)*

B.    State briefly your legal theory or cite appropriate authority:

*In considering whether there is a serious medical need, the court will look at several factors, including: (1) whether a reasonable doctor or patient would consider the need worthy of comment or treatment; (2) whether the condition significantly affects daily activities; and (3) whether you have chronic and serious pain. Bober v. Wright, 305 F.3d 1578 (2d Cir. 2003). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.ct 285 (1976). A prisoner's medical need is 'serious' where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' Estelle, 429 U.S. 97.*

3

IX. STATEMENT OF CLAIM (CONTINUED):

C5 lamina extending into the spinous process with focus of increased STIR signal within the adjacent posterior cervical/paraspinal soft tissues, as well as increased T2 STIR signal within the right cervical cord at this level; a linear T1 hypointense focus focus at the level of the minimal fracture extending anteriorly to the posterior aspect of the C5 superior endplate; which is determined to be consistent with contusion, Plaintiff sustained after being stabbed in the neck/spine.

Plaintiff's diagnosis also noted penetrating spinal cord injury to his C4-5 vertebral with ASIA D severity, left C3-4 and C4-5 paracentral posterior disc osteophyte complexes impressed upon the anterior thecal sac narrowing the associated neural foramina, multilevel uncovertebral facet hypertrophy with left C3-C4 severe and right C4-C5 moderate/severe neural foramina stenosis, mild irregularity at the superior endplate margin of C4, C5 and C6, with mild C6 vertebral body height loss, and mild intervertebral disc space height loss at C4-5 and C5-6; Right hemiparesis, puncture and stab wounds to superficial soft tissues of neck and back, cervical spine fracture, blunt trauma to cervical spine.

2) Plaintiff was admitted to the Neuroscience Floor for further evaluation and treatment and discharged June 8, 2015.

3) Discharge procedures and treatments issued by Vyacheslav Isaakovich Marder, DO, of the University Hospital, Trauma - Specified Pain Management and Injury workup for Plaintiff.

4) Doctor Sabine Dessieux Boyd Ateau FNP, and doctor Tomoko Tanaka MD of the University Hospital, on July 23, 2015, performed a six week follow up evaluation of Plaintiff and discontinued the use of Plaintiff's minimal collar, instructing Plaintiff to return to clinic should he

(Attachment 1, Page 3, sec. IX-A)

IX. STATEMENT OF CLAIM (CONTINUED):

EXPERIENCE ANY COMPLICATIONS: "MR. BLAIR WILL RETURN TO THE NEUROSURGICAL SPINE CLINIC ON AN AS NEEDED BASIS."

5) Plaintiff was RETURNED to SOUTHCENTRAL CORRECTIONAL CENTER on June 8, 2015, AND ASSIGNED TO THE PRISON'S TCU MEDICAL UNIT WHERE HE REMAINED UNTIL July 28, 2015, TREATED WITH PAIN COMBATIVE DRUGS SUCH AS Tramadol AND Neurotin, UNTIL HE WAS ADMINISTRATIVELY TRANSFERRED (July 28, 2015) to Jefferson City CORRECTIONAL CENTER.

6) BETWEEN June 8, 2015 - PRESENT DATE, Plaintiff BEGAN EXPERIENCING INCREASING PAINS in HIS LOWER BACK, NECK, SHOULDER, WITH BURNING PAIN in RIGHT ARM. THE BURNING PAINS EVIDENCED in HIS LOWER LEFT EXTREMITY AND PROGRESSED MID-LEFT OBLIQUE LEVEL CAUSING A LOSS OF SENSATION AND PROGRESSED INTO CONSTANT SHARP-BURNING PAIN.

7) Plaintiff BEGAN FIRST COMPLAINING OF THESE PROGRESSING PAINS TO DOCTOR CHUBA R. Ashokkumar (SOUTHCENTRAL CORR. CNTR) ON or ABOUT July 8, 2015.

8) July 28, 2015, Plaintiff WAS INITIALLY SCREENED BY MS. Pamela S. SWARTZ, APRN, (JCCC), DIAGNOSED AS CHRONIC CARE PATIENT, DISCONTINUED THE USE of EXERCISE BALL TO STRENGTHEN HIS HAND, AND TOLD THAT HE WOULD NO LONGER BE PROVIDED TRAMADOL, NOR NEUROTIN, FOR HIS NERVE PAINS DUE TO "CUT BACKS" AND THE MEDICATION BEING CONSIDERED A NARCOTIC. SWARTZ REFUSED TO REFER ME TO Specialist.

9) Plaintiff CORRESPONDED TO Superintendent Jay CASSADY (JCCC) HIS CONDITIONS AND COMPLAINED of INADEQUATE MEDICAL TREATMENT VIA SEVERAL CORRESPONDENCE. Plaintiff RECEIVED NO RESPONSE.

10) Plaintiff's CONDITIONS PROGRESSIVELY WORSENED. HE DEVELOPED NEW SYMPTOMS DUE TO LACK of PROPER MEDICAL TREATMENT. August 14, 2015, Plaintiff's SCHEDULED DOCTOR'S APPOINTMENT WAS RESCHEDULED. August 24, 2015, THE APPOINTMENT WAS AGAIN RESCHEDULED; HOWEVER, HE WAS PRESCRIBED Meloxicam - A NON-EFFECTIVE Mobic - by Pamela S. Swartz, APRN.

(ATTACHMENT #2, Page 3, SECTION IX-A.)

IX. STATEMENT OF CLAIM (CONTINUED):

"Defendant Swartz then tried to prescribe Plaintiff Nortriptyline, an antidepressant and tricyclic, as management for his constant chronic nerve pains, back pains, neck-shoulder pains, and electrical shocks he experience often touring his head." Plaintiff declined.

(11) In response to Medical Service Request complaint the Plaintiff filed on September 8, 2015, he encountered Institutional ~~Institutional~~ Practitioner Narendrasinh Khengar (# NRKCCIJC), examined and determined to be in constant high level pain, experiencing pinched sensation with certain movements of the head, and electrical sensations when looking down, sleep disturbance from pain when rolling onto right side.

(12) Plaintiff continued to experience pain and worsening symptoms of which he continued his complaints. After several rescheduled doctor appointments, on October 8, 2015, he submitted another MSR for pains, and was received by Practitioner Khengar (# NRKCCIJC). After determining Plaintiff was not receiving medic as ordered, Mr. Khengar placed Plaintiff on prescribed Nortriptyline for pain. After taking the medication for approximately a week, experiencing thoughts of suicide (which he was afraid to report for fear of being placed into a strip-observation cell, nude and on suicide watch), worry, panic attacks, irritability, restlessness — he began refusing this medication stating that "it made me feel funny..." among other reasons. The medication did not manage Plaintiff's pains, nor act to arrest his other developed symptoms.

(13) Plaintiff submitted several more MSRs about his pains. Requesting appropriate medical services for his worsening conditions and to be treated by/referred to a neurologist specialist, someone trained and qualified to properly diagnose and treat his medical disabilities. He was denied these request by nurses responding to his MSRs and complaints.

(Attachment #.3, Page 3, Sec. IX-A)

IX. STATEMENT OF CLAIM (CONTINUED):

14) November 18, 2015, Plaintiff presents to Practitioner Khongar, and is given an inadequate examination. He requested that Mr. Khongar refer him to see the Neurologist at the University Hospital - in Columbia, Missouri, for his worsening conditions. Mr. Khongar refused and asked if Plaintiff is "Insured Medically?" and commented as to Medical Expense. Plaintiff requested Tramadol to combat his pain, which was told "No." Plaintiff then was again placed on Nortriptyline, and again stopped taking the medication after feeling negative effects within a few days.

15) From November 2015 - April 2016, Plaintiff received no affective/effective medical treatment for his chronic pains, and worsening condition.

16) January 2016, Nurse Crystal Houston interviewed Plaintiff concerning his complaint filed against the Medical Unit and states " That's why we scheduled you for 'med-call out' in the evening... so when you take the Nortriptyline, it'll knock you out and you won't feel your pain." Nurse Houston refused to refer Plaintiff to be examined by an outside Neurologist. Neither did she nor the Administration respond formally - to Plaintiff's initial complaint (IRR) or grievance. April 6, 2016, Plaintiff's grievance appeal was denied.

17) Plaintiff filed continued request for pain modifiers and to be treated by an outside specialist. His complaints were ignored. February 22, 2016, He was scheduled to present to a doctor with the pass on; February 23, 2016, the same, March 8, 2016, the same, March 22, 2016 was well. Each appointment was rescheduled.

18) April 14, 2016, Plaintiff was escorted in restraints, hands behind back, to a small cell in the Segregation Unit for 'sick call' where he presents to Doctor Ronald J. Proctor (supposed) and was informed he was the subject of a 'physical exam.'

( Attachment 4, Page 3, Sec IX-A )

IX. STATEMENT OF CLAIMS (CONTINUED)

The Physical examination was, at best, Perfunctory and checklist-oriented. Due to excessive noise, Doctor Proctor stated several times "It's nausea, I can hardly hear you..." Without removing Plaintiff's Restraints, he instructed Plaintiff to turn so that Plaintiff could squeeze his fingers. He then raised Plaintiff's shirt from behind, stating "you have a lot of scar-tissue..." Plaintiff asked to be referred to an "outside doctor" for his nerve and other pains, and vision dizziness and shocks. The request was refused as "expensive and unnecessary" with Doctor Proctor stating "sounds like you need excarboxepine." which he prescribed.

19) February 22, 2016, Plaintiff corresponded complaints of inadequate medical treatment and requesting appropriate intervention and to be treated by an "outside specialist" to Deloise Williams, Assistant Division Director of Rehabilitative Service for/with the Missouri Department of Corrections. Ms. Williams has substantial authority-in her capacity as Division Director of Rehab Services-over the medical staff at JCCC and could have ordered Plaintiff to be reviewed by a neurologist. Ms. Williams deliberately chose to deprive Plaintiff "adequate treatment" by delegating responsibility.

20) Ms. Laramore is Health Service Administrator at the Jefferson City Correctional Center. Melody Griffin, RN, Medical Contract Monitor contacted Laramore regarding Plaintiff's initial complaints of inadequate medical treatment. Ms. Laramore conveyed her knowledge of Plaintiff's medical conditions in her explanation Plaintiff was prescribed Nortriptyline. Laramore is aware of this drug's negative effects and its specific uses - which does not include pain management. She could have ordered Plaintiff to be treated by a neurologist, she refused to do so. She also failed to discontinue the Nortriptyline prescription, which she is aware cause dangerous side effects.

(Attachment #5, Page 3, sec. IX-A)

21) On or about May 20, 2016, Jennifer Long, a Registered Nurse with JCCC - Corizon Health Services interviewed Plaintiff regarding his continued pains. Acknowledging Plaintiff's prescription for Oxcarbazepine (started April 14, 2016), Ms. Long informed Plaintiff that it would take "at least two more months for the Oxcarbazepine to start working on your pain." She refused Plaintiff further treatment.

22) On or about May 26, 2016, responding to Plaintiff's continued complaints of extreme pain, Ms. Valerie D. Donnelson (VDD00076), a Practitioner employed with JCCC - Corizon Health Service, examined Plaintiff. Reviewing Plaintiff's medical file/record, she immediately discontinued the prescription for Oxcarbazepine; stating: " You're too young! You don't have a history of seizure! If you continue taking this stuff, it'll mess your brain up and what'll happen - you'll start falling out, shaking, and having seizures. This stuff isn't for pain!" Ms. Donnelson then ordered Plaintiff to be prescribed Folic Acid tablets, Magnesium Oxide tablets, and B-12 injection once per month. Plaintiff informed Ms. Donnelson that his pains "have gotten worse - if that's possible." Ms. Donnelson suggested the cause to be the Oxcarbazepine, and explained that her prescriptions would 'correct' the drug's effects.

23) Drug: Oxcarbazepine is used alone or in combination with other medications to control certain types of seizures, and is in a class of medications called anticonvulsants. Among many of its caused side effects are: vision changes, double vision, constipation, back pain, muscle weakness or sudden tightness, headache, joint pain; some of the very pains Plaintiff sought treatment for, and all symptoms he suffers now.

( Attachment # 6, Page 3, Sec. IX - A )

24) MR. J. Cofield responded to Plaintiff's grievance appeal, and denied Plaintiff's request to be provided adequate medical treatment and referred to an 'outside specialist.' The decision was not protective of my well-being. MR. Cofield reviewed my medical record, grievance records and 'investigation' of my concern, denied my request, and approved the detrimental prescription of Oxcarbazepine, relying upon the sole 'independent, discretionary, medical judgment of the site physicians to determine what care, medication and treatment is needed.' As Director of Operations, Constituent Services, MR. Cofield is aware that no Neurologist are on staff at JCCC, by admittance is aware of my medical conditions, and refused to seek outside consultation which would have been necessary and useful in providing me appropriate medical care, deliberately refusing to respond to my TRUE medical needs, though he has substantial power over the medical staff and could have ordered review by a neurologist/specialist.

25) T. Bredeman, responded to Plaintiff's grievance appeal and denied Plaintiff's request for adequate medical treatment and to be referred to an 'outside specialist' despite reviewing Plaintiff's medical record and the Neurologist's order that Plaintiff be returned to the Neuroscience Lab if he started experiencing complications related to his injuries — and, on an as needed basis. MR. Bredeman is the Director Operations Associate Regional Medical Director for Missouri Department of Corrections and Corizon Health Services and is aware that no Neurologist are on staff at JCCC, and refused to seek outside consultation which would have been necessary and useful in providing Plaintiff appropriate medical care. MR. Bredeman's decision based solely on 'the independent, discretionary medical judgment of the site physicians to determine what care, medication and treatment is needed.' This Defendant also approved the inappropriate and

( Attachment # 7, Page 3, Sec. IX. 'A')

DETRIMENTAL PRESCRIPTION OF DACARBIZEPINE, which PERPETUATED PLAINTIFF'S PAINS. THE DECISION WAS NOT PROTECTIVE OF MY WELL-BEING AND BREDEMAN DELIBERATELY REFUSED TO RESPOND TO MY TRUE MEDICAL NEEDS, AS DIRECTOR OPERATIONS ASSOCIATE REGIONAL MEDICAL DIRECTOR HE COULD HAVE ORDERED PLAINTIFF TO BE RETURNED TO THE NEUROSCIENCE LAB FOR SPECIALIST TREATMENT.

26) JEFFERSON CITY CORRECTIONAL CENTER'S MD, APRN, PRACTITIONERS, NURSES ARE UNQUALIFIED TO PRESCRIBE MENTAL HEALTH MEDICATIONS FOR PHYSICAL CHRONIC PAINS. HOWEVER, THE PRACTITIONERS AND MEDICAL DOCTOR RENDER THIS SERVICE TO PLAINTIFF AND THE PRISON'S POPULATION UNCHECKED.

27) CORIZON HEALTH SERVICES (WITH MISSOURI DEPARTMENT OF CORRECTIONS) EXISTING POLICY IS TO PRESCRIBE EASIER AND LESS EFFICACIOUS TREATMENT PLANS FOR PLAINTIFF (PRISONERS) WHO HAS BEEN CLASSIFIED MEDICALLY AS A CHRONIC PAIN CHRONIC CARE PATIENT WHO IS AT RISK FOR HAS HAVE BEGUN TO DEVELOP DEGENERATIVE CONDITIONS, PRESCRIBING MEDICATION WHICH CAUSE A PAIN AND OTHER MEDICAL PROBLEMS. THE PAIN TO PLAINTIFF PERPETUATED BY THE USE OF NORTRIPTYLINE AND DACARBIZEPINE WAS GREAT AN EXTENDED AND OVER A PERIOD OF TIME LONGER THAN ONE MONTH.

28) CORIZON HEALTH SERVICE HAS BEEN THE PRIMARY MEDICAL SERVICE PROVIDERS FOR MISSOURI DEPARTMENT OF CORRECTION FOR OVER FIVE YEARS. ITS PRIMARY RESPONSIBILITY IS TO SET THE OVERALL DIRECTION FOR [MODOC] PROVISIONS OF HEALTH CARE.

29) CORIZON HEALTH SERVICE CREATED A POLICY AND/OR CUSTOM UNDER WHICH THE UNCONSTITUTIONAL PRACTICES [AND HARM TO PLAINTIFF] OCCURRED, AND ALLOWS CONTINUANCE OF SUCH POLICY AND/OR CUSTOM — I.E. PRESCRIBING TRICYCLIC ANTIDEPRESSION / ANTICONVULSANT MENTAL HEALTH MEDICATIONS TO TREAT CHRONIC PAIN — WHICH PERPETUATES PAIN IN ITS USER, CREATES SERIOUS MENTAL ILLNESS, AND INDUCES SUICIDAL AND OTHER DANGEROUS SIDE EFFECTS.

30) CORIZON HEALTH SERVICE RECEIVES MONTHLY MEDICAL REPORTS FROM THE INDIVIDUAL PRISONS IN THE MODOC, THESE REPORTS MADE CORIZON AWARE OF MY SERIOUS MEDICAL CONDITION AND CHRONIC PAIN CHRONIC CARE NEEDS; CORIZON REFUSE TO RESPOND TO MY TRUE MEDICAL NEEDS.

( ATTACHMENT # 8, PAGE 3, SEC. IX-A )

IX. Statement of Claim (continued)

31) Stacey Walkes was notified on either June 1, 2015, or June 8, 2015, via fax titled: "Important - Utilization Review from University of Missouri Health Care" and faxed by Debbie Campbell, RN. The fax inquired as to Plaintiff's insurance provider and informed Ms. Walkes of Plaintiff's medical condition. Ms. Walkes failed to ensure Plaintiff was financially able to receive full medical treatment.

32) The defendants are individually aware of the Plaintiff's persistent chronic pain, and recognize or are aware of the need to treat this condition, but refuse to meet this condition with a neurologist/specialist trained in the field of neurology capable of providing therapies or other treatments superior to those provided in the prison [JCCC].

33) The defendants are aware of the neurologist's orders to return Plaintiff to the neuroscience lab, on an as needed basis, if he experience complications from his injuries.

34) Defendants refuse to return Plaintiff to the neuroscience lab for treatment by a neuropathy specialist.

35) The defendants approved and promulgated the site physician(s)' policy/custom of prescribing Plaintiff (and prisoners) the wrong medications to treat chronic pain condition.

36) Defendants Khengar and Proctor deliberately prescribed Plaintiff the wrong medication(s) which caused him extreme perpetuated pains and other harmful side effects.

37) Defendants' deliberate deprivation of chronic pain care subjects Plaintiff to severe unnecessary and wanton infliction of pain.

38) The defendants' denial to treat Plaintiff to specialty care and referrals, and to follow neurosurgeon's orders to return Plaintiff to neuroscience lab subjects Plaintiff to severe unnecessary and wanton infliction of pain and cruel and unusual punishment.

(Attachment 9, Page 3, Sec. IX-A)

IX. STATEMENT of CLAIM (CONTINUED)

39) Plaintiff's Chronic pain condition affects his daily activities, and his request to see a specialist are still being denied and/or ignored.

40) Corizon Medical Service policy and/or custom is to unlawfully assign nurses and physicians' assistants to perform task beyond their training and deciding whether Plaintiff may see a doctor or be referred to be treated by a specialist. This custom has perpetuated Plaintiff's chronic pains, and caused degenerative conditions.

41) Corizon Medical Service personnel unlawfully perform functions and provide treatment they are not licensed nor trained to perform — i.e., prescribing mental health medications for chronic pain.

42) Adequate medical care meeting Plaintiff's true medical neuropathy needs is a basic human need the Plaintiff is being deprived of. The defendants are deliberately exposing/subjecting Plaintiff to serious harm — recognizing Plaintiff has chronic pain chronic care needs and refusing to meet them.

43) The tricyclic mental health antidepressant/anticonvulsant medications (Oxcarbazepine and Nortriptyline - both which were prescribed to Plaintiff for chronic pain treatment and worsened his condition — are generally/commonly prescribed to majority of the prison population (JCCC) of over 2,600 inmates as a "cure all."

44) There were no actual examination before Plaintiff was prescribed Oxcarbazepine (nor Nortriptyline).

45) Inmate/Plaintiff's medical records show a universal awareness of the fact that his problems are the domain of a neurologist, and chiropractor, and that he should be referred for treatment, which has been refused.

(ATTACHMENT #10, page 3, sec. IX-A)

IX. STATEMENT of Claim (CONTINUED)

46) THE INADEQUATE AND MINIMAL REMEDIES DID NOT PROVIDE RELIEF. PAIN PERSISTED AND WORSENED.

47) CORIZON MEDICAL SERVICE AND PRISON OFFICIALS ARE AWARE OF PLAINTIFF'S CONSTANT AND OFT TIMES EXCRUCIATING PAINS (BURNING) AND REFUSE TO PROVIDE READILY AVAILABLE PRESCRIPTION STRENGTH pain MEDICATION.

48) DOCTOR RONALD J. PROCTOR (AND PRACTITIONERS) will NOT ADEQUATELY DIAGNOSE OR TREAT CHRONIC pain CHRONIC CARE patients AT THE PRISON, AND failed TO PROVIDE THESE SERVICE TO PLAINTIFF.

49) CORIZON MEDICAL SERVICES AND PRISON OFFICIALS AND AGENTS REFUSED TO MEET THEIR AFFIRMATIVE Duty TO PROVIDE PLAINTIFF REASONABLE ACCESS TO MEDICAL CARE, TO PROVIDE COMPETENT, DILIGENT MEDICAL PERSONNEL, AND TO ENSURE THAT THE PRESCRIBED CARE IS/WAS IN FACT APPROPRIATE AND NON-life THREATENING OR INJURIOUS

(ATTACHMENT # 11, PAGE 3, Sec. IX-A)

X.    Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.

_ABATARD Plaintiff MONETARY DAMAGES AGAINST EACH DEFENDANT INDIVIDUALLY in the AMOUNT of $750.000 - COMPENSATORY Relief , AND $ 250.000 PUNITIVE DAMAGES - FOR Physical AND Psychological /MENTAL INJURIES SUSTAINED AS RESULT of DEFENDANTS' DELIBERATE INDIFFERENCE of Plaintiff's HEALTH CONDITIONS; ISSUE INJUNCTIVE RELIEF ORDERING DEFENDANTS TO REFER Plaintiff TO BE TREATED BY A NEUROLOGIST AND Chiropractor, (Plaintiff SEEKS THIS RELIEF AGAINST DEFENDANTS in THEIR official Capacity AS well._

XI.    Counsel:

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name. _NA_

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?          Yes_____   No_✓_

If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.

_____
_____
_____

C. Have you previously had a lawyer representing you in a civil action in this court?
                                                    Yes_✓_    No_____

If your answer is "Yes," state the name and address of the lawyer.
_Bill KENNEY, 1118 McGEE STREET, SUITE 2000, KANSAS CITY, MISSOURI, 64106 —_
_Bill KENNEY LAW FIRM, LLC_

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed (signed) this _13th_ day of _JUNE_ 20_16_.

_Diamond D. D. Blair_
Signature(s) of Plaintiff(s)

_____

_____

4